IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARLON WATERS,                    §
                                  §
            Plaintiff,            §
                                  §
v.                                §          Civil Action No. 3:11-CV-0540-K
                                  §
CITY OF DALLAS,                   §
                                  §
            Defendant.            §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas's ("the City") Motion for Summary

Judgment (Doc. No. 23).  The court has reviewed the City's Motion and Brief in

Support, Plaintiff Marlon Waters' ("Lt. Waters") Response and Brief in Support, the

City's Reply, the evidence and applicable law.  After review, the Court rules that

Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's case is

dismissed with prejudice.  Defendant's Objections to Plaintiff's Summary Judgment

Response Evidence are overruled as moot.

## I.      Factual Background

Lt. Waters is an African-American male who was a lieutenant in the Dallas Police

Department.  Lt. Waters alleges the City discriminated and retaliated against him

through a series of actions.  In 2008, Lt. Waters was lieutenant in the city jail.  During

his time there, he initiated an Internal Affairs Division investigation regarding sexual

harassment.  One of the sergeants in his command was allegedly sexually harassing a

crime technician who worked at the jail.  In August of 2009, Lt. Waters provided a written statement to Internal Affairs pursuant to the investigation.  Additionally, Internal Affairs investigated allegations against Lt. Waters for sexual harassment while he was assigned to the city jail.  Also while at the jail, Lt. Waters had his television and office privileges restricted.  Finally, on September 4, 2009, the City transferred Lt. Waters to the Communications Division ("Communications").  Lt. Waters generally alleges that all the actions taken against him were either discriminatory or retaliation for initiating the sexual harassment investigation.

Approximately two weeks later, the city transferred Lt. Waters to the Southwest Patrol Division.  At Southwest Patrol, Lt. Waters' supervisor was Deputy Chief Rick Watson ("Chief Watson").  Waters alleges this transfer was discrimination and retaliation, and in conclusory fashion, alleges that Chief Watson discriminated against him and retaliated against him immediately upon his transfer to Southwest Patrol.

Waters first specific complaint was approximately five months after his transfer to Southwest Patrol, during the NBA all-star event.  During that event, Chief Watson was in charge of police security.  At the time, the City was going through substantial budget problems.  Chief Watson was charged with creating a plan for providing adequate security while minimizing overtime.  The City put Chief Watson under strict instructions to account for all overtime expended.  During the event, snow hit the Dallas area.  When that happened, Lt. Waters asked his subordinates to report early, saying

that it would be better to be early than late.  Lt. Waters did not seek Chief Watson's permission to authorize the overtime.  Lt. Waters unilateral decision caused accrual of approximately 3.5 hours of unauthorized overtime.

The next day, Chief Watson left several phone messages expressing dissatisfaction with Lt. Waters unauthorized use of overtime.  When Lt. Waters arrived for his shift that day, Chief Watson asked to speak to Lt. Waters about the use of the overtime. Chief Watson then verbally reprimanded Lt. Waters for approving the unauthorized overtime.  Afterward, Chief Watson sent Lt. Waters home so the department could recoup the cost of the unauthorized overtime.  Lt. Waters alleges his treatment during the all-star event was both discriminatory and retaliatory.

On March 31, 2010, Lt. Waters wrote a letter (the "March 31st Letter") to Asst. Chief Floyd Simpson ("Chief Simpson").  The March 31st Letter detailed eight instances over the previous six months that Lt. Waters felt reflected a poor relationship between Chief Watson and him.  Lt. Waters' complaints in the letter included: (1) an unreturned e-mail; (2) Chief Watson not taking meetings with him; (3) Chief Watson's treatment of him at the NBA all-star event; and (4) Chief Watson undermining his authority as a lieutenant by interfering with Lt. Waters' command decisions.

Most importantly for this case, Lt. Waters claims that in this letter he complained of racial discrimination.  The letter shows that Lt. Waters told Chief Simpson that other African-American supervisors in the Southwest Patrol complained to Lt. Waters about

Hispanic supervisors, and that Lt. Waters concluded the watch was polarized along racial lines. Lt. Waters goes on to say that he had requested a meeting with Chief Watson to get Chief Watson's opinion about a personnel matter and suggestions on handling a "distraction." Chief Watson never met with Lt. Waters regarding the unidentified personnel matter. In the letter, Lt. Waters did not attribute his unfair treatment to discrimination or race. Lt. Waters specifically stated that the unfair treatment was for reasons unbeknownst to him.

Two weeks later, Lt. Waters met with Chief Simpson and Chief Watson regarding his complaints of unfair treatment in the letter. At no time during the meeting did Lt. Waters indicate his unfair treatment was discrimination or based on his race. Later that day Chief Watson initiated a transfer, reassigning Lt. Waters to Lake West, effective the next day, April 14, 2010. Lt. Waters alleges that the transfer was, in substance a demotion, which was discrimination and retaliation.

When transferred to Lake West, Lt. Waters was commander of the Lake West storefront. The Lake West storefront is a police outpost in a high crime area. Lt. Waters alleges that the transfer was a demotion in substance, because he claims Chief Watson intentionally orchestrated an effort to cut Lt. Waters out of the chain of command. Specifically, Lt. Waters complains that Chief Watson did not return an introductory e-mail. Lt. Waters also alleges that Chief Watson's communication with Lt. Waters was poor. Further, Chief Watson took Sergeant Sheldon Smith ("Sgt.

Smith") to several community meetings rather than Lt. Waters.  Lt. Waters points to one example where the Lake West chain of command was supposed to attend a meeting regarding a Lake West officer who was shot.  Chief Watson rescheduled the meeting several times with Sgt. Smith and then subsequently started the meeting fifteen minutes early, without Lt. Waters.  Lt. Waters alleges these are all acts of discrimination and retaliation by Chief Watson, making the transfer a demotion.

Finally, on September 20, 2010, Chief Brown ordered a department wide process of reassigning all 104 lieutenants.  Forty-four lieutenants were ordered to new posts as part of this mass reassignment.  Among them, four lieutenants were transferred into Communications, including Lt. Waters.  Three were transferred to the day shift.  Lt. Waters was transferred to the night shift.

A week later, Lt. Waters attended a meeting with Assistant Chief Daniel Garcia ("Chief Garcia"), Deputy Chief Zachary Belton, "(Chief Belton") and the other three lieutenants transferred to Communications.  After the meeting, Lt. Waters had a private meeting with Chief Garcia and Chief Belton.  At the private meeting, Chief Garcia informed Lt. Waters that of 104 lieutenants chosen by the chiefs for assignments, he was chosen last.  Chief Garcia told Lt. Waters that he was in Communications as a last resort because he, "kept getting into these little things," and if he didn't shape up, he was out the door.   Lt. Waters alleges that the reassignment to Communications was discrimination and retaliation.

Lt. Waters filed his charge of discrimination  with the EEOC on November 4, 2010.  In it, Lt. Waters identified alleged discrimination and retaliation occurring from March 13, 2010 to September 29, 2010.  On December 21, 2010, the EEOC issued Lt. Waters a "right-to-sue" letter, closing the EEOC investigation, and Lt. Waters brought this suit.

## II.    The City's Motion for Summary Judgment

The City moved for summary judgment on all of Lt. Waters claims.  The City urges several arguments why summary judgment is appropriate for various claims.  First, the City argues that Lt. Waters failed to exhaust his administrative remedies for all his claimed discrimination and retaliation which occurred prior to March 13, 2010.  Second, even if Lt. Waters has exhausted his administrative remedies, Lt. Water's claims of discrimination and retaliation prior to December 31, 2009 are barred by statute of limitations because Lt. Waters failed to timely file a charge of discrimination.  Third, with regard to the transfer to Lake West and the transfer to Communications Division on September 29, 2010, Lt. Waters only remaining claims of discrimination, the City argues Lt. Waters  did not suffer an adverse employment action, has no evidence he was treated less favorably than similarly situated employees outside of his protected class, and has no evidence of pretext to rebut the City's explanations for the transfers.  Fourth, with regard to Lt. Waters claims that the transfer to Lake West and to Communications were retaliation, the City argues Lt. Waters did not engage in a protected activity, did

not suffer an adverse employment action, and has no evidence of pretext to rebut the City's explanations.

**A      Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant.  *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc..*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; but, the nonmovant may not rest upon allegations in the pleadings to make such a showing.  *Id.* at 321-25; *Anderson*, 477 U.S. at 255-57.  The nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence; not with "conclusory allegations,

speculation, and unsubstantiated assertions." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-52; *Boudreaux*, 402 F.3d at 540. If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

### B.      Failure to Exhaust Administrative Remedies

A Title VII plaintiff must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). The parties acknowledge that some courts in the Fifth Circuit hold that failure to exhaust administrative remedies deprives a court of subject-matter jurisdiction, while others hold that exhaustion is a prerequisite to suit, subject to waiver and estoppel. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006). Indeed, the Court has previously acknowledged this uncertainty. *See Jones v. City of Dallas*, 2008 WL 696364, at *2 (N.D. Tex. March 11, 2008). However, as in *Jones*, the Court need not decide the issue in this case because it does not materially affect the results. *See id.*

Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Taylor*, 296 F.3d at 379. The scope of the exhaustion requirement has been defined in light of two competing Title VII policies

- 8 -

that it further. *Pacheco*, 448 F.3d at 788. An EEOC charge should be construed liberally because the provisions of Title VII were not designed for the sophisticated and many complaints are initiated pro se. *Sanchez v. Standards Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970). This broad scope is limited to the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Id.* at 466. A broader scope would allow a complaint to encompass allegations outside the charge, which circumvents the EEOC's investigatory and conciliatory role, and deprives the charged party of notice of the discriminatory acts. *See Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004).

In his complaint, Lt. Waters alleges numerous actions taken by multiple individuals were discrimination, retaliation or both. It is undisputed that Lt. Waters did not specifically mention any of the following claims in his EEOC charge or intake questionnaire: (1) that Lt. Waters was racially discriminated and retaliated against when IAD investigated charges of sexual harassment lodged against Lt. Waters; (2) that Lt. Waters was discriminated against when his office and television privileges were restricted while working at the jail; (3) that Lt. Waters was discriminated against on August 28, 2009, when he was assigned to Communications; (4) that Lt. Waters was discriminated against on September 16, 2009, when he was transferred to the Southwest Patrol Division; and (5) that Lt. Waters was discriminated against when he was verbally admonished for granting overtime without authorization during the NBA All-Star event.

The question is whether investigation of these acts of alleged discrimination could reasonably have been expected to grow out of the charge of discrimination that Lt. Waters did make.  *See Sanchez*, 431 F.2 at 466.

Typically, when considering the liberal construction of a charge of discrimination, courts have allowed plaintiff's to pursue a cause of action where the plaintiff did not affix the proper legal conclusion to his or her factual allegations.  *See, e.g., id.* at 465. Courts have been more stringent where the cause of action stemmed not from an incorrectly labeled legal conclusion, but from factual allegations omitted from the charge of discrimination.  *See, e.g., Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *Turman v. Greenville Indep. Sch. Dist.*, 2005 WL 659017, at *3 (N.D. Tex. March 18, 2005).  Broad interpretation of EEOC charges is designed to protect unlettered lay persons making complaints without legal training or the assistance of counsel.  *Fine*, 995 F.2d at 578.  This rationale does not apply as strongly when considering a complainant's ability to recall and state the facts of which they are complaining.  *Id.*

Lt. Waters omitted from his EEOC charge every factual allegation of discrimination occurring prior to March 13, 2010, which he now alleges in his lawsuit. None of these claims were investigated by the EEOC as a result of Lt. Waters charge of discrimination.  In *Fine,* the court held that it was not reasonable to expect events from a time period later than what the charging party described to grow out of the discrimination charge. *Fine*, 995 F.2d at 578.  In *Turman,* the court found that it was

not reasonable to expect events that happened earlier than the time period described in the charge of discrimination to grow out of the discrimination charge. *Turman*, 2005 WL 659017, at \*3. Lt. Waters omitted factual allegations lay outside the time period of what he actually included in his charge of discrimination. Additionally, there is no reason that Lt. Waters could not have referenced these previous facts in his charge. *See King v. Life Sch.*, 809 F. Supp. 2d 572, 580 (N.D. Tex. 2011); *Harris v. Honda*, 2005 WL 2416000, at \*2 (N.D. Tex., Sept. 30, 2005).

In addition, the following allegations of Lt. Waters occurred while Lt. Waters was employed in different divisions, under different supervisors: (1) IAD's investigation and absolution of Lt. Waters stemming from a sexual harassment complaint; (2) Captain McClain's reducing Lt. Waters' time spent in his office and watching television; (3) Lt. Waters' reassignment from detention services to Communications; and (4) Lt. Waters' reassignment from Communications to Southwest Patrol. Nothing in the charge of discrimination creates a factual basis for the EEOC to look beyond the allegations into multiple different divisions and supervisors.

The Court holds that it is not reasonable to expect an investigation of Lt. Waters allegations of events prior to March 13, 2010 to grow out of the charge of discrimination Lt. Waters filed.

Lt. Waters only other allegation of discrimination which occurred in Southwest Patrol was his verbal admonishment for approving unauthorized overtime during the

NBA All-Star event.   A charge should not be so liberally construed that it would circumvent the investigatory role of the EEOC.   *Clayton*, 106 Fed. Appx. at 271.  The Court recognizes that the facts underlying this allegation were contained in the March 31st Letter, which Lt. Waters identified in his charge.  The document was subsequently turned over to the EEOC.  This tenuous connection does not make it reasonable to expect an investigation of the allegation stemming from the NBA All-Star event. The EEOC investigator on the case specifically told Lt. Waters and his counsel that Lt. Waters original charge investigation was completed, and the EEOC was ready to issue a right-to-sue letter.  The EEOC told Lt. Waters, he would need to file another charge, rather than trying to amend his existing charge to have prior allegations investigated. Allowing a plaintiff to include a factual allegation in his complaint when the plaintiff knows that the factual complaint has not been investigated circumvents the EEOC's role in employment discrimination cases.  The Court finds it is not reasonable to let Lt. Waters circumvent the EEOC here.

Lt. Waters failed to include factual allegations for any discrimination or retaliation prior to March 13, 2010.  For the one factual allegation which Lt. Waters did include in papers filed subsequent to the charge, his discrimination complaint in regards to the NBA All-Star event; the EEOC specifically told Lt. Waters his claim was not investigated.  Because it is not reasonable to expect claims prior to March 13, 2010 to grow out of Lt. Waters charge of discrimination, Lt. Waters has not exhausted his

administrative remedies as to all his claims prior to March 13, 2010.  On this basis, summary judgment is proper for Lt. Waters claims of: (1) discrimination and retaliation for the IAD sexual harassment investigations; (2) discrimination for limiting his television and office privileges; (3) discrimination for his 2009 transfer to Communications; (4) discrimination and retaliation for his transfer to Southwest Patrol; and (5) discrimination for Chief Watson's treatment of him during the NBA All-Star event.

### C.       Failure to Comply with 300 Day Statue of Limitations

Even if the Court found that Lt. Waters had properly exhausted his administrative remedies, the City is entitled to summary judgment on all of Lt. Waters claims stemming from events occurring before December 31, 2009, which is all of Lt. Waters allegations of discrimination at the city jail, his first reassignment to Communications, and his transfer to Southwest Patrol.  The only allegation excluded by Lt. Waters failure to exhaust administrative remedies which is not also excluded by Lt. Waters failure to meet the 300-day deadline for filing a discrimination charge is the allegation related to the NBA All-Star Event.

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC prior to pursuing a lawsuit in court.  *Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 109 (2002).  In a deferral state like Texas, the general rule is that charges of discrimination must be filed within 300 days of the date on which the unlawful practice

occurred.   42 U.S.C. § 2000e-5(e)(1) (West 2006).   The 300-day filing deadline functions as a statute of limitations defense against allegations occurring earlier than 300 days prior to a plaintiff's filing of an EEOC charge.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Lt. Waters filed his charge of discrimination with the EEOC on October 27, 2010. December 31, 2009, is 300 days prior to the date Lt. Waters filed his EEOC charge. Under the general rule, Lt. Waters allegations of discrimination prior to December 31, 2009 are barred by the 300-day limitation.  Lt. Waters allegations of discrimination regarding the following all occurred prior to December 31, 2009: (1) IAD's investigation of Lt. Waters stemming from sexual harassment complaints; (2) Cpt. MacClain's reduction of Lt. Waters' office privileges and television access at detention services; (3) Plaintiff's reassignment to Communications; and (4) Plaintiff's transfer to Southwest Patrol.  Under the general rule, all of these allegations are properly subject to summary judgment, unless Lt. Waters can raise a fact issue.

Lt. Waters attempts briefly to create a fact issue regarding these four allegations. Lt. Waters first argues that these allegations are relevant background evidence in a proceeding in which the status of a current practice is at issue, citing *United Air Lines, Inc. V. Evans*.  431 U.S. 553, 558 (1977).  Whether or not an event is relevant to another claim is not a basis for avoiding summary judgment on a time-barred act, as the time-barred act itself has no legal consequences.  *See id.*

- 14 -

Lt. Waters next argues that the "continuing violation" exception applies. Under the continuing violation theory, a plaintiff need not establish that all of the alleged conduct occurred within the actionable period if the plaintiff can show a series of related acts, where at least one act falls within the limitations period. *Janmeja v. Board of Supervisors*, 96 Fed. Appx. 212, 214-15 (5th Cir. 2004). Lt. Waters does not articulate any facts in the record which support application of the "continuing violation" exception, but merely includes a conclusory statement that the doctrine has been satisfied. This conclusory allegation is not competent summary judgment evidence. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Lt. Waters allegations of conduct prior to December 31, 2009 are barred by limitations under the general rule, and Lt. Waters has not created a fact issue with regard to any exception. The Court finds that the City has conclusively established its limitations defenses, and summary judgment on all of Lt. Waters' allegations prior to December 31, 2009 is proper, independent of Lt. Waters' failure to exhaust his administrative remedies.

### D.    Lt. Waters' Remaining Discrimination Claims

Lt. Waters has two remaining discrimination claims, that the City discriminated against him when Chief Watson transferred him to Lake West and that the City discriminated against him when Chief Brown initiated a transfer process that led to Lt. Waters transfer to Communications. The Court has already determined that Lt. Waters

did not exhaust his administrative remedies regarding his claim that the City discriminated against him when Chief Watson verbally reprimanded him for authorizing overtime without proper approval. Out of an abundance of caution, the Court will also address this claim under the *McDonnell Douglas* burden shifting analysis.

Under Title VII, an employer cannot fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff based upon one of the factors prohibited by Title VII. *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983)).

Title VII claims are analyzed under the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To prevail at the summary judgment stage, a plaintiff must first establish a *prima facie* case of discrimination. *Id.* To establish a *prima facie* case, a plaintiff must provide evidence showing: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was treated less favorably than similarly situated non-class members. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

If a plaintiff produces evidence as to each element of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 414, 420 (5th Cir. 2006). The defendant's burden at this stage is one of production, not persuasion. *See, e.g., St. Mary's Honor Ctr.*, 509 U.S. 506, 507. (1993). If the defendant produces a legitimate, non-discriminatory explanation, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either: (1) the defendant's reason is not true, but is instead a pretext for discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *see also Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005).

### 1.    Lt. Waters' Reprimand During the NBA All-Star Event

Lt. Waters claims that he was reprimanded for authorizing overtime during the NBA All-Star event. Lt. Waters alleges that this reprimand is an actionable adverse employment action. In the discrimination context, adverse employment actions are limited to ultimate employment decisions. *McCoy*, 492 F.3d at 559. Reprimands do not rise to the level of an ultimate employment decision in a Title VII discrimination case. *See Green v. Admin. of Tulane Educ. Fund.*, 284 F.3d 642, 657-58 (5th Cir. 2002) *abrogated on other grounds by Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (finding that among other actions, reprimands do not constitute ultimate employment decisions).

Lt. Waters' reprimand is not an adverse employment action in the discrimination context where the adverse action must be an ultimate employment decision.

Lt. Waters argues that this reprimand constitutes an adverse employment action because Chief Watson also sent him home, denying him seven hours of overtime. A denial of overtime pay may rise to the level of an ultimate employment decision in some cases. *See, e.g., Johnson v. Manpower Prof'l Serv., Inc.*, 442 Fed. Appx. 977, 982 (5th Cir. 2011). A one-time denial of overtime, though, does not rise to this level. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000), *abrogated on other grounds by Burlington Northern*, 548 U.S. 53 (2006). During the period including the NBA All-Star Event, Lt. Waters worked almost 35 hours of overtime. Lt. Waters has no evidence showing he was sent home or denied overtime opportunities at any other time. Lt. Waters summary judgment evidence establishes only a one-time denial of overtime as part of his reprimand. This isolated denial of overtime does not make his reprimand an ultimate employment action.

### 2.    Transfer to Lake West

Chief Watson transferred Lt. Waters from Southwest Patrol to Lake West in April of 2010. Lt. Waters alleges that Chief Watson discriminated against him when Chief Watson transferred him to Lake West. The City argues that the transfer is a purely lateral transfer, which is not an adverse employment action. Alternatively, the City argues that the City has produced a legitimate non-discriminatory reason for the

- 18 -

transfer, and Lt. Waters has failed to offer evidence of pretext.

> ### a.   Whether the Transfer to Lake West Is an Adverse Employment Action.

In the discrimination context of Title VII, adverse employment actions are limited to ultimate employment decisions. *McCoy*, 492 F.3d at 559. For a transfer to be an ultimate employment action, the transfer must amount, objectively, to a demotion. *Alvarado*, 492 F.3d at 612. The Fifth Circuit has determined on several occasions whether a transfer was the equivalent of a demotion, and hence, qualified as an adverse employment action. *See id.* In *Alvarado*, the court reviewed several cases where the Fifth Circuit dealt with whether or not a transfer was the equivalent of a demotion. *See id.* at 612–13. In each case, whether or not a transfer was a demotion turned on the objective evidence regarding the nature of the position. The focus for determining whether or not the transfer is adverse is on the objective qualities of the positions. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 n.8 (5th Cir. 2001). In summarizing their review, the *Alvarado Court* concluded, "Thus, [t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade, it can be a demotion if the new position proves objectively worse–such as being less prestigious or less interesting or providing less room for advancement." *Id.* at 613 (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).

Lt. Waters offers no evidence that the position at Lake West was objectively worse than his position at Southwest Patrol. Lt. Waters offers no evidence that the Lake

West position was less prestigious than his previous position, that the Lake West position was objectively less interesting, or that the Lake West position provided less room for advancement.

Additionally, it is undisputed that Lt. Waters' rank and pay grade stayed the same. Although Lt. Waters argues that he received a pay cut, the undisputed evidence is that the transfer was from a night to day shift, and the objective evidence is that the reduction in pay was due only to a loss of the night shift differential. To meet his burden Lt. Waters must produce enough evidence to allow a reasonable trier of fact to concluded that when viewed objectively, the transfer caused him harm. *Id.* at 614 (quoting *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001)). This loss of the shift differential had nothing to do with the transfer to Lake West itself. Lt. Waters would have lost the shift differential for any position which had daytime hours. Even if Lt. Waters' subjective preference views the loss of the shift differential as adverse, a reasonable factfinder could not conclude that this trade-off between a night shift pay incentive and day shift hours caused Lt. Waters harm.

Lt. Waters has offered no evidence under any framework the Fifth Circuit has recognized for determining that a transfer is objectively a demotion. Lt. Waters' entire argument focuses solely on Lt. Waters's subjective perception of how Chief Watson treated him after the transfer. Lt. Waters has not produced evidence to show that the transfer to Lake West was objectively a demotion. Because there is no evidence the

Case 3:11-cv-00540-K   Document 33   Filed 11/01/12   Page 21 of 46   PageID 849

transfer was objectively a demotion, Lt. Waters transfer to Lake West is not an adverse employment action for purposes of a discrimination claim.

### b.      Lt. Waters' Evidence of Pretext

Even if the Court assumed that Lt. Waters had shown a *prima facie* case, the City would still be entitled to summary judgment on Lt. Waters claim that Chief Watson discriminated him by transferring him to the Lake West position because Lt. Waters has no evidence of pretext.  Assuming that Lt. Waters had shown a *prima facie* case, the burden shifts to the City to produce a legitimate non-discriminatory reason for the transfer.   The City explained that the Lake West storefront had a vacancy at the Lieutenant's position.  Chief Watson was required to fill the vacancy.  Watson selected Lt. Waters because he recognized the unique challenges and opportunities at Lake West, and he wanted to give Lt. Waters the opportunity.  Additionally, Chief Watson wanted to give Lt. Waters an opportunity to work days instead of deep nights.  The City has produced a legitimate, non-discriminatory reason for its actions.

Since the City has produced a legitimate, non-discriminatory reason for its actions, Lt. Waters must show that the City's explanation is pretext.  To avoid summary judgment at the pretext stage of the analysis, a plaintiff must be able to show that the evidence, taken as a whole, creates a fact issue regarding whether the stated reason actually motivated the employer and a reasonable inference that race was a determinative factor in the actions of which plaintiff complains.  *Walton v. Bisco*

- 21 -

*Industries, Inc.*, 119 F.3d 368, 370 (5th Cir. 1997). A plaintiff must produce evidence from which a reasonable jury could conclude both that the defendant's reason was false, and that discrimination was the real reason. *Id.* (quoting *St. Mary's honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Lt. Waters arguments for pretext are the same as his arguments that the transfer was actually a demotion. Lt. Waters alleges that Chief Watson cut Lt. Waters out of the chain of command. At the summary judgment stage, The nonmovant must produce competent evidence to create a fact issue. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). The nonmovant cannot rely on conclusory allegations, speculation, and unsubstantiated assertions. *Id.* Lt. Waters' allegation that Chief Watson cut him out of the chain of command is conclusory. To demonstrate that the City's explanation is false, Waters claims that Chief Watson and Sergeant Smith instructed all the Lake West personnel not to communicate with Lt. Waters. However, Lt. Waters cites no evidence to show that Chief Watson actually gave any such instruction.

Lt. Waters alleges this discrimination by refusing to communicate with him occurred immediately upon his transfer to Lake West, but the only evidence he cites to support his argument regarding the immediacy of Chief Watson's reaction is that Chief Watson didn't respond to an introductory e-mail that Lt. Waters sent.

- 22 -

Lt. Waters primarily relies on various isolated events occurring throughout his time at Lake West rather than immediately following his transfer.  He cites his deposition for evidence that Chief Watson communicated directly with Sergeant Smith, another African-American employee, on several occasions that year and took Sgt. Smith to several community meetings.  Additionally, when Lt. Waters raised a breach of protocol because officers contacted Sgt. Smith off-duty rather than Lt. Waters by radio, Chief Watson made a hand-gesture of dismissal towards Lt. Waters.  None of that evidence actually shows how the City's explanation is false.  Moreover, even if it did, the evidence cited does not support an inference that any adverse treatment was based on Lt. Waters race.  Based on the summary judgment record, the Court finds that no reasonable factfinder could find that race was the determinative factor in Chief Watson's decision to transfer Lt. Waters to Lake West.

### 3.     Lt. Waters Reassignment to Communications in September, 2010

Lt. Waters was reassigned from Lake West to Communications in September of 2010.  Lt. Waters alleges that this reassignment was racial discrimination.  The City maintains that Lt. Waters cannot show he suffered an adverse employment action or that he was treated differently than similarly situated non-class members.  The City additionally argues that, even if Lt. Waters could establish a *prima facie* case, Lt. Waters has no evidence of pretext.

### a.    Whether the September, 2010 Transfer to Communications Is an Adverse Employment Action

Lt. Waters alleges that his reassignment from Lake West to Communications was an adverse employment action because Communications was a punitive assignment generally, and because he was assigned to a less desirable shift.

To show that this transfer is actionable, Lt. Waters must show the transfer amounts to a demotion, producing objective evidence showing the new position is worse. *See Alvarado,* 492 F.3d at 613–14.  An employee's subjective preference is insufficient to create a fact issue regarding whether or not the transfer amounts to a demotion.  *Id.*  Rather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused the plaintiff harm.  *Id.* *(quoting Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001)).

In those cases where plaintiff's have successfully argued that a transfer is tantamount to a demotion, courts have relied on factors such as objective loss of prestige, *Alvarado*, 492 F.3d at 614; "elite" status of the prior position, *Sharp v. City of Houston*, 164 F.3d 923, 928 (5th Cir. 1999); or actual numbers of voluntary transfers to a position in combination with the appeals stemming from involuntary transfers in and out of the position, *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992).  Lt. Waters offers no objective evidence of any loss of prestige.  Although Lt. Waters argues in conclusory fashion that he lost the benefits and prestige of being a lieutenant commander, Lt. Waters' grade, base pay, and employment benefits remained the same.

Lt. Waters offers no objective evidence that either position is part of an elite unit of any kind and produces no data to show that police officers as a whole consider the position to be so undesirable that it amounts to a demotion. Lt. Waters offers even less objective evidence than did the plaintiff in *Serna*, where the Fifth Circuit held that the testimony of multiple officers still only established the subjective preference of those officers. *See Serna*, 244 F.3d at 485.

Lt. Waters only summary judgment evidence as to the desirability of Communications is based on subjective perception. Lt. Waters relies primarily on his subjective perception that Communications is not desirable. He also relies on Assistant Chief Danny Garcia's ("Chief Garcia") comment that he had heard another person refer to communications as non-desirable and a newspaper article recounting a lawer's summary of a witnesses's opinion that transfers to Communications were generally considered punitive. Lt. Waters own subjective perception is not sufficient to show that there is evidence the new position is objectively worse. Chief Garcia's reiteration of another person's opinion does not do so either, and the contents of the newspaper, even if it could be reduced to admissible form, still only establishes the subjective perspective of a single person. This evidence is insufficient to show that the new position is objectively worse.

The change in shifts does not make this purely lateral transfer actionable either. Merely changing a plaintiff's hours does not constitute an adverse employment action.

- 25 -

*Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998). A mere change in hours will not rescue Lt. Waters claim in the absence of other objective evidence showing the transfer is a demotion. Because Lt. Waters evidence establishes only his subjective perception that the reassignment to Communications was undesirable, his lateral transfer, even with the change in hours, is not an adverse employment action.

### b. Lack of Pretext Evidence

Even if the Court assumed that Lt. Waters had shown a *prima facie* case, the City would still be entitled to summary judgment on Lt. Waters claim of discrimination as it relates to the September, 2010 transfer to Communications, because Lt. Waters has no evidence of pretext. Assuming that Lt. Waters had shown a *prima facie* case, the burden shifts to the City to produce a legitimate non-discriminatory reason for the transfer. The City produced evidence that Lt. Waters was reassigned pursuant to a department-wide rotation of the lieutenants initiated by Chief Brown. Lt. Waters was transferred to Communications, because Lt. Waters was the last out of 104 lieutenants to be chosen for assignment. Additionally, the City transferred two Hispanic males and one Caucasian male to Communications in the same standard mass-reassignment. The City has produced a legitimate, non-discriminatory explanation and the burden shifts back to Lt. Waters to show that the City's explanation is either pretext, or while true, discrimination was a motivating factor in the transfer.

- 26 -

Lt. Waters argues that the City's explanation is pretext, but has failed to offer any evidence sufficient to create a fact issue.  To avoid summary judgment at the pretext stage of the analysis, a plaintiff must be able to produce evidence from which a reasonable jury could conclude both that the defendant's reason was false, and that discrimination was the real reason. *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 370 (5th Cir. 1997) (quoting *St. Mary's honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Lt. Waters claims that the City's explanation is pretext because the City failed to assert that the other individuals transferred were lieutenants, and thus similarly situated. Lt. Waters does not dispute that the mass reassignment occurred or that he was chosen last out of all the lieutenants for the new assignment.  Furthermore, the assignment announcement shows that contrary to Lt. Waters assertion, the three other individuals transferred to Communications were lieutenants.

Lt. Waters also argues, without legal support, that the City's explanation is insufficient because it only addresses one alleged discriminatory transfer.  Nothing demands that one explanation cover all of Lt. Waters claims.  The standard mass reassignment was offered as a reason for the transfer to Communications in September, 2010, and Lt. Waters has failed to offer any evidence to show both that the City's reason is false and that the real reason was discrimination based on his race.

### E.     Lt. Waters' Remaining Retaliation Claims

Lt. Waters also alleges that the City retaliated against him for complaining of racial discrimination.   Lt. Waters alleges two specific action which he asserts are actionable retaliation.   First, Lt. Waters alleges the City retaliated against him when Chief Watson transferred him to Lake West.   Second, Lt. Waters alleges his transfer from Lake West to Communications was also retaliation.   Lt. Waters has failed to established a *prima facie* case for retaliation with regard to these two actions because Waters' only protected activity is not causally connected to either transfer, and neither transfer is a materially adverse action.   Even if Lt. Waters had established a *prima facie* case, the Court finds that Lt. Waters has produced no evidence that the City's explanations are pretext.

### 1.     Lt. Waters Prima Facie Case of Retaliation

To establish a *prima facie* case, Lt. Waters must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).   Lt. Waters claims he engaged in protected activity when he participated in Cassandra Jones's sexual harassment investigation, when he wrote the March 31st Letter to Chief Simpson, and when he filed his charge with the EEOC.   Due to Lt. Waters claiming multiple protected activities and multiple retaliatory acts, the Court will begin analysis of Lt. Waters *prima*

*facie* case for his claims of retaliation with the causal connection element.

### a.      Causal Connection Evidence

To show a causal connection a plaintiff must show that the employer's decision was based, in part, on knowledge of the employee's protected activity.  *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998).  When the employment decision and the protected activity are wholly unrelated, there is no causal link as a matter of law.  *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).  Lt. Water's transfer to Lake West occurred on April 14, 2010, and his transfer to Communications occurred on September 28, 2010.  Lt. Waters did not file a charge of discrimination with the EEOC until October 27, 2010.  Because it was filed after the transfers, and Lt. Waters has shown no evidence as to how the City would have had knowledge of his future filing, participation in that protected activity cannot be the basis for his retaliation claim.

Lt. Waters also lists his participation in the Cassandra Jones sexual harassment investigation as a protected activity.  Lt. Waters participated in this investigation on August 10 and August 28, 2009.  The earliest of the two transfers occurred on April 14, 2010, nearly eight months after his last participation in the sexual harassment investigation.  Lt. Waters alleges no other evidence that would support a causal connection between the Lake West transfer and September, 2010, transfer to Communications.

Temporal proximity alone, when very close, may establish a prima facie case of retaliation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Cases accepting mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close. *Id.* at 273 (internal citations omitted). Large gaps in time between the complaint and the adverse action demonstrate that a retaliatory motive is highly unlikely. *Grizzle v. The Travelers Health Network*, 14 F.3d 261, 268 (5th Cir. 1994). Not only did eight months pass between the protected activity and Waters' transfer to Lake West, Lt. Waters was under different supervisors. Lt. Waters has no evidence to suggest that either Chief Watson, who initiated the Lake West transfer, or Chief Brown, who initiated the lieutenant shuffle leading to the September, 2010, Communications transfer had any knowledge of Lt. Waters' participation in Cassandra Jones's sexual harassment investigation. Lt. Waters' participation in Cassandra Jones's sexual harassment investigation cannot satisfy the protected activity element for his claim that his transfer to Lake West or his September, 2010 transfer to Communications transfer was retaliation.

Plaintiff argues that an eight-month gap does not preclude a causal connection as a matter of law, relying on *Conlay v. Baylor College of Medicine*. 688 F. Supp. 2d 586, 597 (S.D. Tex. 2010). *Conlay* is distinguishable. In *Conlay*, the plaintiff offered additional evidence, showing that the decision maker had specific knowledge of the plaintiff's

protected activity.  *See id.*  Additionally, the *Conlay* court relied primarily on the fact that the protected activity intervened between the events cited by the defendant to justify the adverse employment action and the action itself.  *Id.*  The City's reason for transferring Lt. Waters to Lake West was to fill a vacancy, and the City's reason for transferring Lt. Waters to Communications was a department-wide lieutenants shuffle. Neither reason pre-dates Lt. Waters' participation in Cassandra Jones sexual harassment investigation, making the reasoning of *Conlay* inapplicable.

Lt. Waters also bases his retaliation claims on his March 31st Letter to Chief Simpson.  Lt. Waters wrote this letter approximately two weeks before Chief Watson transferred him to Lake West.  Additionally, Chief Simpson, Chief Watson, and Lt. Waters all met on April 13, 2010, to discuss Lt. Waters' letter.  The next day Chief Watson transferred Lt. Waters to Lake West.  For the transfer to Lake West, the temporal proximity between the March 31st Letter and the transfer is very close. Because of the close timing and evidence that Chief Watson knew of Lt. Waters alleged protected activity, the Court cannot hold that there is no causal connection as a matter of law.  As a result, the Court must determine whether or not the March 31st Letter is protected activity, and if so, whether the transfer to Lake West is an adverse employment action to determine whether or not Lt. Waters has established a *prima facie* case.

For the subsequent transfer from Lake West to Communications, the March 31st Letter was written five and a half months prior to the transfer. The Court need not decide whether Lt. Waters has created a fact issue on the causal connection element with respect to the transfer to communications because the Court has found that Lt. Waters has failed to meet the other elements of his *prima facie* case, with respect to the September, 2010 transfer to Communications. As such, the Court will assume without deciding that Lt. Waters has shown a causal connection between the March 31st Letter and his transfer to Communications.

### b.      Whether the March 31st Letter Was Protected Activity

The only remaining basis on which Lt. Waters can make a *prima facie* case of retaliation for his transfer to Lake West and then to Communications is the March 31st Letter to Chief Simpson. Lt. Waters repeatedly characterizes this letter as a complaint about race discrimination, a protected activity. The City argues the March 31st Letter is not a complaint of discrimination, and therefore, is not protected activity.

Employees engage in protected activity when they oppose conduct made unlawful under Title VII or participate in the investigatory process. 42 U.S.C. § 2000e-3(a). Lt. Waters' argument is based on the opposition clause. The Fifth Circuit has consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII does not constitute protected activity. *See, e.g., Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011). Similarly, complaining about unfair

treatment without specifying why the treatment is unfair . . . is not protected activity. *Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed. Appx. 390, 395 (5th Cir. 2008).

Waters' March 31st Letter is a complaint about personal unfair treatment that contains no reference to an unlawful employment practice.  The subject line of the letter is specific to Chief Watson and "unfair treatment."  The introduction to the letter focuses exclusively on a poor relationship between Lt. Waters and Chief Watson.  The introduction expressly says that the reasons for this poor relationship are "unbeknownst" to Lt. Waters.  Lt. Waters did not use the word discrimination in his letter, nor did he say in anyway that his unfair treatment was based on his race.  The entire letter is devoted to outlining individual incidents which Lt. Waters feels is representative of the poor relationship between Chief Watson and him.  Additionally, Lt. Waters met with Chief Watson and Chief Simpson to discuss the letter, and Lt. Waters did not raise discrimination or race in that meeting either.  Under these circumstances, Lt. Waters complaints of unfair treatment without specifying why the treatment is unfair is not protected activity.

Lt. Waters argues that he referenced complaints by African American supervisors regarding Hispanic supervisors and an observation that the watch was polarized along racial lines.  These passing references are merely background to Lt. Waters' actual complaint, which was that Chief Watson did not have a meeting with him regarding a personnel matter.  These references also cannot be read to imply that Lt. Waters

opposed this practice to Chief Watson and, upon his inaction, was reiterating his opposition to Chief Simpson.  Lt. Waters admits that he never told Chief Watson the underlying reasons for wanting to meet with him.  Even in the March 31st Letter, Lt. Waters does not say his complaint is that Hispanic Supervisors were discriminating against African American Supervisors because of their race, or that the racial polarization was a practice of Chief Watson.  At best, these references are vague complaints that do not identify an unlawful employment activity.  *See Davis*, 448 Fed. Appx. at 493.  The March 31st Letter is not a protected activity.  The March 31st Letter is the only alleged protected activity which can be the basis for Lt. Waters retaliation claims stemming from his transfer to Lake West and his September, 2010 transfer to Communications.  Lt. Waters has failed to establish a *prima facie* case of retaliation for his transfer to Lake West and his September, 2010 transfer to Communications.

> **c.** **Whether Lt. Waters' Lake West Transfer and September, 2010 Transfer to Communications Are Adverse Employment Actions**

Even if Lt. Waters had met the other elements of his *prima facie* case, Lt. Waters has also failed to establish that he suffered an adverse employment action for his transfer to Lake West or his September, 2010 transfer to Communications.  Lt. Waters argues that his transfer to Lake West was a demotion because of how Chief Watson treated him after the transfer.  Lt. Waters argues his September, 2010 transfer to Communications is a demotion because Communications is an undesirable, punitive assignment.  The

City argues that the evidence shows both transfers were not objectively demotions, but purely lateral transfers, which are not actionable.

To establish an actionable adverse employment action in a Title VII retaliation case, a plaintiff must show that the employment action has produced an injury or harm. *Burlington Northern*, 548 U.S. at 68.  A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Id.*  In a transfer or reassignment situation, whether or not a transfer is material adverse depends upon the circumstances of a particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.  *Id.*  To be materially adverse, the circumstances must show that the transfer involves a demotion in form or substance.  *Sabzevari v. Reliable Life Ins. Co.*, 264 Fed. Appx. 392, 396 (5th Cir. 2008).  While the standard for adverse employment action is different under Title VII discrimination claims (requiring an ultimate employment decision) and Title VII retaliation claims (requiring a materially adverse employment decision), the analysis in the transfer context is similar because "[b]y and large a reassignment that does not affect pay or promotion opportunities lacks [the] potential to dissuade and thus is not actionable." *Holden v. Illinois Tool Works, Inc.*, 2007 WL 4591752, at *5 (S.D. Tex. December 27, 2007)(quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)).

The lieutenant at Lake West is the commander of the Lake West storefront. As commander, the lieutenant's position enjoys autonomy to creatively combat crime in the surrounding high crime area. Other lieutenants expressed interest to Chief Watson in filling the vacancy at the Lake West storefront. Lt. Waters has produced no evidence that the transfer involved an objective reduction in pay, title, or grade. He has produced no evidence that the Lake West position was objectively worse because it was less prestigious, less interesting, or provided less room for advancement.

Like his discrimination claim, Lt. Waters' competent summary judgment evidence to support his claim that the transfer is materially adverse is that: (1) Chief Watson did not return an introductory email; (2) Chief Watson took Sergeant Smith to several community meetings; (3) Chief Watson avoided communicating directly with him on at least one occasion when holding a meeting on an officer involved shooting in Lt. Waters command.; and (4) Chief Watson made a dismissive gesture to Lt. Waters when Lt. Waters raised an issue of officers not following protocol by not contacting him.

The materiality requirement reflects the importance of separating significant from trivial harms in the retaliation context. *Burlington Northern*, 548 U.S. at 68. Not all adverse conduct rises to the level of material adversity. *Id.* Petty slights, minor annoyances, and simple lack of good manners that employees regularly encounter in the workplace are not actionable retaliatory conduct. *Id.* Lt. Waters evidence, at best, established a few instances of poor communication over the course of nearly half a year.

However, none of it rises above the type of petty slights that employees regularly encounter.

Lt. Waters alleges much more significant retaliatory conduct by Chief Watson and Sergeant Smith, insomuch as  Lt. Waters alleges that the two instructed all his officers at Lake West specifically not to communicate with Lt. Waters.  The Court need not determine whether such an instruction is materially adverse because Lt. Waters allegation is a conclusory allegation, not sufficient to defeat summary judgment.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Lt. Waters produces no evidence to substantiate his claim that Chief Watson ever gave such an instruction.

The evidence does not show that the Lake West position was, in any objective sense, a demotion in form or substance.  The few instances of poor communication do not change an otherwise purely lateral transfer into a demotion that might well dissuade a reasonable worker from making or supporting a charge of discrimination.  The transfer to Lake West is not an adverse employment action, and even if the Court found that his March 31st Letter was protected activity, Lt. Waters has still failed to establish a *prima facie* case of retaliation with respect to his transfer to Lake West.

Lt. Waters has also failed to establish that his September, 2010 transfer to Communications was an adverse employment action.  To be an adverse employment action, the circumstances must show this transfer involves a demotion in form or

substance. *Sabzevari*, 264 Fed. Appx. at 396. Lt. Waters has produced no evidence that this transfer affected his pay, title, or grade. Comparing, Southwest Patrol, where Lt. Waters was working at the time of his alleged protected activity, to Communications, there is no evidence that Communications was objectively less prestigious, less interesting, or provided less room for advancement than Southwest Patrol. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007).

Lt. Waters relies on three pieces of evidence to support his argument that the September, 2010 transfer to Communications was a demotion. First, Lt. Waters cites his own subjective perspective that Communications is not a desirable place to work. Second, Chief Garcia repeated the comment of another unknown person that believed that Communications was not a desirable work place. Third, Lt. Waters has presented a newspaper article writing about a lawyer recounting a phrase of testimony from a witness in another case, where the witness reportedly said that in the Dallas Police Department transfers to Communications were often considered punishment.

A plaintiff's subjective preference is insufficient to create a fact issue regarding whether or not the transfer amounts to a demotion. *Id.* Even the testimony of multiple officers is not sufficient to create a fact issue regarding whether a transfer is objectively a demotion. *Serna v. City of San Antonio*, 244 F.3d 479 (5th Cir. 2001). Lt. Waters most probative evidence is only his subjective preference. At best, Lt. Waters evidence reflects two others giving individual opinions that Communications is undesirable or punitive.

Even if this other evidence is admissible, it is still less objective and less probative than the testimony of the officers in *Serna*, where the Fifth Circuit found the testimony insufficient to create a fact issue on whether a transfer was objectively a demotion. *Id.*

### 2.    Pretext Analysis of Lt. Water's Retaliation Claims

The Court has already determined tat Lt. Waters has failed to establish a *prima facie* case.  Even if the Court assumes that Lt. Waters established a *prima facie* case, the City is still entitled to summary judgment on the issue of pretext.  Assuming that Lt. Waters has established a *prima facie case*, the burden shifts to the employer to advance a legitimate non-discriminatory reason for the adverse employment action.  *Gee*, 289 F.3d at 345.  This burden is one of production, not persuasion.  *McCoy v. City of Shreveport*, 492 F.3d 551, 557(5th Cir. 2007).  If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory purpose. *Id.*

Under the pretext analysis, the plaintiff bears the burden of producing legally sufficient evidence that the defendant's explanation is false and that the real reason is discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 515.  Whether summary judgment is appropriate in any particular case depends on a number of factors, including the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case

and that properly may be considered on a motion for judgment as a matter of law. *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)).

a.     **Pretext Analysis of Lt. Waters' Transfer to Lake West**

The City's proffered legitimate, non-discriminatory explanation for transferring Lt. Waters to Lake West is that Chief Watson had a vacancy that had to be filled and that he wanted to give Lt. Waters an opportunity in a unique position, such as the Lake West Storefront station. Also, Chief Watson explained that he wanted to give Lt. Waters the opportunity to work a day shift. Lt. Waters argues that this is merely pretext because, once transferred there, Chief Watson cut him out of the chain of command, effectively making it a demotion.

To determine whether Lt. Waters has created a fact issue regarding pretext in this case, the Court first considers the strength of Lt. Waters *prima facie* case. Lt. Waters *prima facie* case, if made at all, is extremely weak. The Court has already held that Lt. Waters did not oppose racial discrimination in his March 31st Letter to Chief Simpson. Further, the Court has also held that the transfer to Lake West was also not an adverse employment action. To consider the pretext issue, the Court has assumed that Lt. Waters made a *prima facie* case. Given the ambiguous references to race in his March, 31st Letter and the desirable characteristics of the Lake West position, Lt. Waters' *prima facie* case is very weak. Because it is weak, it must cut against a finding of a fact issue on

pretext.

Second, the Court considers the probative value of Lt. Waters proof that the City's explanation is false. The only proof that Lt. Waters has produced is his own subjective perception of how Chief Watson treated him at Lake West. Furthermore, Lt. Waters' evidence of pretext merely reiterates his evidence of his *prima facie* case. None of the evidence offered is particularly probative into determining that Chief Watson's explanation that he needed to fill a vacancy and wanted to give Lt. Waters the opportunity is false. Lt. Waters complains that Chief Watson didn't return one introductory e-mail, but produces no evidence as to why Chief Watson was obligated to return every e-mail received. Lt. Waters complains that Chief Watson didn't take him to various community meetings, but produces no evidence that Chief Watson was obligated to or should have taken Lt. Waters. Finally, Lt. Waters identifies one instance where Chief Watson communicated with Sgt. Smith instead of Lt. Waters in scheduling a meeting, but Lt. Waters produces no evidence that this was improper.

Lt. Waters claims that this evidence rebuts Chief Watson's explanation that he wanted to give Lt. Waters an opportunity to succeed. However, Lt. Waters does not show how these isolated incidents would affect his ability to successfully fill the position at Lake West. In direct contrast to his assertions, Lt. Waters admits in his deposition that he believed the position was an important one and admits that he was able to respond to violent crimes and interact with the community. Lt. Waters claims that

Chief Watson's actions served to cut off his ability to succeed in the opportunity Chief Watson gave to him, but the evidence presented does not show that connection.

Finally, the Court considers any other evidence that supports the employer's case and is properly considered on summary judgment. At the pretext stage, the burden on the plaintiff is to produce evidence rebutting each legitimate explanation for the employer's action. Not only did Chief Watson indicate he wanted to give Lt. Waters an opportunity to succeed at Lake West, but he also indicated he wanted to give Lt. Waters the chance to work days instead of nights, and in doing so, Chief Watson filled a vacancy that he was required to fill. None of Plaintiff's evidence establishes that these explanations are unworthy of credence.

Assuming he has made a *prima facie* case, it is a weak one. Lt. Waters evidence is of little probative value for rebutting the explanation that Chief Watson wanted to give Lt. Waters an opportunity to succeed. Lt. Waters evidence does not address at all whether Chief Watson's other explanations are unworthy of credence. Given the record as a whole, the Court finds that no reasonable juror could find that the transfer to Lake West or Chief Watson's actions afterward were retaliatory.

> **b.     Pretext Analysis of Lt. Waters' September, 2010 Transfer to Communications**

In September 2010, Lt. Waters was transferred from Lake West to Communications. The City's proffered legitimate, non-discriminatory explanation is that Lt. Waters was transferred as part of a standard mass reassignment of lieutenants,

in which forty-four lieutenants were assigned to new posts.

The Court again, first considers the strength of Lt. Waters *prima facie* case with regard to the transfer to Communications.  Lt. Waters' *prima facie* case is even weaker, if present at all, than his case for his transfer to Lake West.  This transfer occurred substantially later than his transfer to Lake West.  Lt. Waters alleged protected activity contains only ambiguous references to race.  The Court has already determined that the transfer itself was not adverse.  All of these conclusions cut against finding a fact issue on pretext.

Second, Lt. Waters' pretext evidence is not probative on determining whether the City's explanation is false.  Lt. Waters offers no evidence that the mass reassignment was not a standard, department-wide operation, that he was not supposed to be involved in the mass reassignment, or that the reason he was assigned to Communications was to retaliate against him.  The City specified three other individuals, all lieutenants, who received transfers to Communications at the same time as Lt. Waters.

Lt. Waters relies on a conversation with Chief Garcia upon his arrival at Communications.  Chief Garcia informed Lt. Waters that he was last out of 104 lieutenants to be selected for an assignment.  Chief Garcia then told Lt. Waters that he was put into Communications as a last resort because  "kept getting into these little things," and if he didn't shape up, he was out the door.  This ambiguous statement does not rebut the City's explanation.  Lt. Waters has no evidence that Chief Garcia knew of

Lt. Waters' alleged protected activity.  Without that knowledge, Lt. Waters offers no explanation as to how this ambiguous reference could be referencing his March 31st Letter.

Finally, the Court considers any other evidence which supports the City's case and is properly considered on summary judgment.  For the September, 2010 transfer to Communications, Lt. Waters offers no evidence that Chief Brown knew about his alleged opposition to racial discrimination.  Chief Brown initiated the transfer process.  Without some evidence to show that Chief Brown could be making his decision based in part on Lt. Waters' writing of the March 31st Letter, no reasonable factfinder could conclude that Lt. Waters transfer to Communications in September, 2010 was retaliatory.  Even if Lt. Waters March 31st Letter is protected activity, which the Court has found it is not, the City is still entitled to summary judgment on Lt. Waters claim that his September 2010 transfer to Communications was retaliation.

### F.    Lt. Waters' Hostile Work Environment Claim

For the first time, in his Response to the City's Motion for Summary Judgment, Lt. Waters presents a hostile work environment claim.  A claim which is not raised in a complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court. *Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (quoting *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990). Lt. Waters has not pled a hostile work environment claim in this case.  Lt. Waters

- 44 -

cannot rely on a raising a hostile work environment claim at the summary judgment stage to avoid summary judgment.  As Lt. Waters hostile work environment claim raised in his response is not properly before the Court, the Court cannot consider it when deciding whether summary judgment is proper.

Even if the Court considered this claim as properly before the Court, the City would be entitled to summary judgment on it.  To establish a hostile work environment claim, a plaintiff must prove, among other elements, that the harassment was based on race, and the harassment complained of affected a term, condition or privilege of employment.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).  To be actionable, the workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  The work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.
*Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Lt. Waters pleads only one fact where he alleges harassment, when Chief Watson called him into work only to send him home after an hour.  Even viewed in the light most favorable to Lt. Waters, no reasonable person would find his working environment objectively hostile.  Summary judgment on his hostile work environment claim would

be proper on this basis, even if the claim were properly before the court.

### III.    Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is

**GRANTED,** and Plaintiff's claims are hereby **dismissed with prejudice.**  Judgment will

be entered by separate document.

**SO ORDERED.**

**Signed, November 1st, 2012.**


_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE